We have Mr. Webb Smith for the appellant and Mr. John Allman for the appellant. Mr. Smith, you may begin when you're prepared to do so. May it please the Court? Yes. Your Honor, this case involves the appeal of a judgment which was based on the use of Mr. Green's charge account by a third party, Bob Penske. The facts are not really in dispute. When Mr. Green went into R.P. Lumber Co. Well, some of the facts are in dispute, aren't they? The facts about the count, the charge count, that's correct. When Mr. Green established this account, he filled out a written application. On the written application, it indicated person authorized to charge. It was Tony Green alone. Thereafter, Tony Green went in and asked R.P. Lumber if a third party, Rob Penske, could be permitted to charge on this account. R.P. authorized it. When you say R.P. authorized it, what does that mean? They allowed Rob Penske to charge on this account. Okay, but the document wasn't changed. The document was not changed. Okay. It was verbally done. So Mr. Penske went into the store, he bought things, they put it on an account, and Mr. Green thereafter paid for a certain amount of time. That is correct. But the document here. The document was never changed. Okay. So the only written document was the charge count agreement, which was never changed. So this went on until May of 2012, at which time Mr. Green went in to R.P. Lumber and said no more, Mr. Penske is no longer authorized to charge. And this is where we get to the dispute. Getting to the classic dispute of statute of frauds. And at that time, we do have facts in dispute because Mr. Green's testimony was that he revoked this authority and that he notified two people from R.P. Lumber, the gentleman, Mr. Ernstine, who was present when the charge count was set up, and a second party in corporate. So his testimony was he called them both and advised them that Rob Penske no longer had authority to charge on his account. There was testimony from Mr. Ernst that this did not occur and he would, not only that, but he would call Rob Penske every time, call Tony Green every time there was a charge to again affirm the oral authorization to utilize the account. R.P. Lumber filed suit to collect on this. The next trial was upheld and in this ruling, the court found in favor of R.P. Lumber. There was an affirmative defense of statute of frauds asserted. A motion to reconsider, again asserting Mr. Penske's authority in the Illinois Frauds Act. The court declined to reconsider. In its order, the court made findings. One, there was no dispute that the defendant had an open line of credit. Two, there was no dispute that the defendant authorized individuals to purchase materials under that line of credit. And three, there was no indication that the agreement was terminated or that the charges were not authorized. It's our position that that final determination was against manifest weight of the evidence because there was, in fact, Tony Green's testimony at trial that the charges after May 2nd were not authorized. That was the nature of his pleadings and his affirmative defense, and then that goes to the Illinois Frauds Act and the statute of frauds. The Illinois Frauds Act states that no party can be held answerable for the debt of another unless it's in writing. Then the Illinois statute of frauds basically says that no contract for the sale of goods in excess of $500 is enforceable unless it's in writing. There are a few exceptions to this, and it's our position that none of these exceptions are present in this case. Let me ask you this. The $9,000-some-odd that was owed seemed to be the result of separate charges. Yes, Your Honor. And so are we to look at each charge as a $500? I mean, we look at the statute of frauds. We have anything in excess of $500, but what if the bill was $192? That's a good question, Your Honor. What do we do? But that's not the case here. Each of these charges were, in fact, in excess of $500. Okay. After the May 12th? After May 12th, yes. Okay. And even if that were the case, we still have to get past the Illinois Frauds Act, which says that any promise to answer for the goods of another has to be in writing. So even though your client did pay for any of the charges prior to May 12th, you're saying that he didn't have to pay for those either under the statute? That is correct. Now, there is an exception to the statute which says that it is enforceable but only to the extent of the goods admitted. Now, the fact is he did admit to those charges before May 12th and did, in fact, pay for them. I noted in a footnote that there was one invoice that they produced at trial which had a signature which purported to be my client's signature. His testimony was that it was not his signature. And for what amount was that? That was for $1,700 in change. And that's after the May 12th? I believe it was. So with respect to that, that could have been a credibility issue that the court had. Yes. And with regard to that, we're not really challenging that. Okay. But what you're saying is the rest of them, there was no admission that the court could have made a fine deal on. And because of that, the statute of frauds effectively applies and bars the court from getting into credibility issues. Okay. So that amount was how much? $1,700 and $1,179.22, Your Honor. $1,179.22. $1,179.22. And is that amount included in the court's order of $9,044? It is, Your Honor. Okay. So you would subtract the $1,179 from the $944? $1,179.22. Yes, sir. You would subtract that from this overall judgment. I could concede that the court was within its discretion to look into the credibility with regard to the genuineness of the signature and award $1,179.22. But that's only because there was a piece of paper that had a signature. That is correct. There is a writing which would have effectively removed that one transaction from the Illinois Frauds Act. Because it could have been considered an omission. Yes, Your Honor. Now, there's a few other exceptions to the Frauds Act, and it would be my position that they are not present here. If you look at the Supreme Court of Rosewood v. Caterpillar, that case involved an employee of Caterpillar who was injured, applied for worker's comp. And then as part of the process, Caterpillar arranged for some intermediate care treatment at this Rosewood facility. The nurse for Caterpillar did that and orally authorized payment. When the bill came due, I think $177,000. Don't quote me on the exact amount. But Caterpillar said, no, we're not going to pay for it. Rosewood brought the suit. Caterpillar filed a motion to dismiss and argued that that was barred by the Illinois Frauds Act. Because, again, it was a promise to answer for the debt of a third party. What about custom and practice? Is there a custom and practice exception? No, Your Honor. The exceptions to the Frauds Act is what's called the leading object rule. And that means that if there's a leading object or some benefit to the promisor, in this case Mr. Green, that would be an exception. But what was the nature of the relationship? Was he like a subcontractor? He was a roofer. Pinsky? Pinsky was a roofer. I'm sorry? A roofer? A roofer. So a contractor that did roofing. Well, can't you say there was a benefit to Mr. Green that he conducted his work? Well, he did not. He was not a roofer. As I know, there was no facts that there was any relationship. And the evidence brought out at trial, Your Honor, was that Mr. Green received no consideration of any form from Mr. Pinsky. So there was no proof by R.P. Lumber that he didn't derive a benefit. The uncontroverted evidence was Mr. Green's testimony that he received no consideration from Mr. Pinsky. I believe that is an important fact because that would remove the consideration of the leading object rule. There's another doctrine called the suretyship. That was advanced in the Caterpillar case. The court remanded that. In this situation, there's no suretyship because for that to apply, Mr. Pinsky would have had to have had an obligation to R.P. Lumber. And then Mr. Green would have came in and guaranteed the payment. Here is Mr. Green's account, and he authorized the use. So he was the guarantor. He was the guarantor. So that can be distinguished as well. In rendering his decision in Rosewood, Rosewood was clear that the court may not depart from the plain meaning of the statute by reading into it exceptions, limitations, or conditions that would conflict with the express legislative intent. Here, you know, it's a classic law school application. You've got the statute of frauds, the Illinois Frauds Act, which limit the discretion of the trial court absent a few exceptions, none of which are present in this case. I just want just to follow up on Justice Chapman. The exceptions that you were just discussing, the order says that this was common practice. Is common practice the equivalent of deriving a benefit? I mean, is the court in its order when it says it was common practice between the defendant and R.P. Lumber that he would pay the bills? Can that be an exception to the statute of frauds? I don't see it because I believe that's reading into and trying to expand the express language of the statute. I don't know what the court meant other than this had gone on for a period of time up to May 12 when Mr. Green testified that no more. He did not get a benefit. He ended up paying a lot of money for Mr. Pinsky's use of his account. It's a harsh result, but that was the intent of the statutes and the legislature to prevent other harsh results if there was fraud involved. What if it's true that every time Pinsky came in, a call was made and Mr. Green orally authorized it? Do you think that can be an exception? That would be an exception if Mr. Green acknowledged it, because there is the exception which a contract which does not satisfy the requirements of Section 1, which is valid if the party against whom is sought admits in his pleading testimony or otherwise in court that a contract or so is made. But the contract is only enforceable to the extent of the goods admitted. Here, you know, the pattern of practice was admitted until the time that it no longer was admitted. At that point, the statute steps in and bars any. And it seems to me there's no discretion of the court there. That is. That has. That is the government of our. Okay. Got it. All right. Thank you so much. I'm done with my questions. Justice. Thank you. Thank you. You'll have the opportunity to rebut. Mr. Allman. Isn't the whole purpose of the statute to avoid these kind of scenarios? I believe that's true, Your Honor. But we have an agreement between the parties, and that's admitted by Tony Green. What he says is that I revoke my consent. That was the only testimony that there was. There was an agreement, and then he says I revoke my consent. But what I'm saying is the statute, I think, anticipated these kinds of, excuse me, liar's matches where potentially one side is not telling the truth. And that's why it's kind of a rigid statute that requires that there be writings that memorialize your agreement. And with the exception of very few circumstances, you're bound by that. Well, based upon representations of Mr. Green and Mr. Pinsky who were allied together, we delivered the goods to Mr. Pinsky, and they received the benefit of that. We performed our part of the contract, and we billed him for that. And they paid. And then out of the blue, Mr. Green says, well, I said no more. And that was his evidence. But the judge, who was the person who determined the credibility of the witnesses, didn't believe that. But it's his position that credibility does not come into play unless there's some admission. And there has been no admission, apparently. Not one. Yes. No disputed admission. Right. I guess it depends on how you define the admission or what you think is the agreement. When Mr. Green is called, and he admits that he was called, and asked about authorization for Mr. Pinsky, and he said yes, the testimony from our crew member was every time that Pinsky called, we called Tony Green and we got his consent. And that probably shouldn't have happened. None of that should have happened if somebody was trying to operate under the letter of the law. Because the agreement that was in writing said that only Mr. Green was authorized to make purchases on his line of credit. Correct? And this charge could have been avoided if the first time Mr. Green called in and said, hey, I've got this other guy, Mr. Pinsky, and I'd like to allow him to make purchases. Then RP Lumber could have just added a little addendum that said, and Mr. Pinsky, and we wouldn't be here. And if we were talking about, I might agree, if we were talking about the first charge that Mr. Pinsky made, Mr. Green said, I didn't authorize that, and we said, okay, we made a mistake, we're sorry. But when he makes charge after charge after charge. No, what I'm saying is if he was added as an additional person that had authority from the very first time that Mr. Green called in, we wouldn't be here, would we? Under that scenario, you are correct. And that's what the statute anticipates, or I believe is trying to prevent. Judge, I think that the statute is intended to prevent somebody saying there's a contract when there isn't. Mr. Green has agreed there was a contract, and he agreed to pay. The question is whether his withdrawal of his consent was acknowledged, and whether the court, in its discretion, and judging on the credibility of the witnesses, found that consent to be the actual testimony of the case to be truthful or not. If Mr. Green came in and said that I made these authorizations, and they were all my charges, but they were not in writing, so I'm not going to pay, we would say, well, you have an agreement. You acknowledge that agreement. And that's what we have here. He's acknowledged the agreement. He said, I agreed to pay. The problem is it wasn't in writing, and that's what the statute anticipates will prevent scenarios like we have right here. And it must be in writing, is what I see. I've answered it the best way that I can, Your Honor. I think that, number one, the partial performance. Number two, I think that there was an agreement, and it's the court, after hearing the testimony of the witnesses, made the decision and the judgment that that consent was not revoked. And so we do have an acknowledgment, and that's the difference. I think that's the critical difference in this case. Well, this goes to a question that we'd asked before, and that is, does the judge really have any discretion under this statute? It doesn't appear to be so. And as harsh as that may be, where you have to have the defendant, or not the defendant, but the person who authorized, previously authorized the debt, has to admit that he authorized it, or it's got to be in writing. So as harsh as that may seem, it appears like at least custom and practice is out the window on these kinds of cases, which I understand for a lumber company and then how this works probably would be very ridiculous because people come in, they need the lumber, this is how business is conducted. I guess under that scenario, Your Honor, I could take my credit card and give it to somebody and let them go charge us. It's not my charge. I didn't authorize that. It's not in writing. And so go collect from a neighbor? Yeah, I think you can with the credit card company. I think you can do exactly just that. If you didn't authorize it, you can write the credit card company within 30 days, and you don't have to make the payment. But I did authorize it, although I didn't have it in writing. I can't imagine that that's the special case. But that's why Justice Chapman is talking about the liar rule, I mean, to avoid all of this. I think that the situation is different when the defendant admits that they had an agreement, they authorized the charges. But the agreement wasn't in writing, so that's a new agreement that's not in writing. And according to both the statute of frauds and the Illinois Fraud Act, they have to be in writing. And the only one that was in writing was for the authority of Mr. Breed. I don't know what else to say. I believe that the state of the law is different than that, but obviously we have a disagreement about that. Any further questions? I don't think so. Thank you. Do you have anything in front of you? Yes, very briefly. The court has effectively identified the issues. I would just like to point out, with regard to counsel's statement about being allied together, Mr. Green and Mr. Pinsky, there was no evidence of that. And I only point that out with regard to the one exception of suretyship, which doesn't really apply anyway, or the leading object exception. None of the exceptions that exist are present in this case. There's no evidence of any exception. The fact that the court may not have believed Mr. Green, or even liked him, has been removed by application of the Frauds Act and the statute of frauds. It is a harsh result, but again, the court identified one way to prevent it. Just come in and say, give us written authority to authorize Mr. Pinsky to charge on your account. That didn't happen. That's a plain reading of the act as far as recovery in this case. That's all I have. Thank you both for your briefs and argument.